IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARRIOTT HOTEL SERVICES, INC.,** | |
| *Plaintiff*, | |
| v. | Civil No.: 8:24-cv-03240-JRR |
| **AMERICAN COLLEGE OF TOXICOLOGY,** | |
| *Defendant*. | |

### MEMORANDUM OPINION

Pending before the court is Defendant American College of Toxicology's ("ACT") Motion to Dismiss (ECF No. 10, the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion will be granted.

### I.    BACKGROUND[1]

This breach of contract action arises from Defendant's cancellation of a conference planned to take place at The Gaylord National Resort & Convention Center (the "Hotel") located in Prince George's County, Maryland, and managed by Plaintiff Marriott Hotel Services, Inc. ("Marriott"). On September 27, 2018, Marriott and ACT entered into a Group Sales Agreement (the "Contract") for accommodations, and food and beverage service for ACT's conference, which was scheduled to take place from November 11 through 18, 2021. (ECF No. 6 ¶ 5.) Pursuant to the Contract, ACT agreed to use 3,492 sleeping room nights at the Hotel at the rate of $249.00 per room per

---

[1] For purposes of resolving the Motion to Dismiss, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 6.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

night plus applicable taxes, and to spend not less than $100,000.00 in banquet food and beverage, plus applicable taxes. (ECF No. 6 ¶¶ 5–7.)

The Contract provided that if ACT cancelled the event within 179 days of November 11, 2021, it would pay liquidated damages totaling "80% of four (4) peak nights of rooms." *Id.* ¶ 9. ACT cancelled the event by letter on August 31, 2021, "due to the COVID-19 pandemic and associate variants." *Id.* ¶ 10; Ex. B to Amended Complaint, ACT notice of cancellation ("Cancellation Notice"). Marriott sent ACT an invoice for liquidated damages on September 1, 2021, and a final demand for $548,613.60 on February 16, 2022. *Id.* ¶¶ 10, 12; Exs. C and D to Amended Complaint. ACT failed and refused to pay the invoice. *Id.* ¶ 14.

On September 3, 2024, Marriott sued ACT for breach of contract in the Circuit Court for Prince George's County, Maryland (Case No. C-16-CV-24-004121). (ECF No. 1.) Ten days later, Marriott filed an Amended Complaint. *Id.* In the Amended Complaint, Marriott alleges ACT breached the Contract and seeks $548,613.60 in liquidated damages along with pre- and post-judgment interest. (ECF No. 6.) On November 7, 2024, ACT removed the action to this court (ECF No. 1) and shortly thereafter filed the instant Motion per Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10.)

## II. LEGAL STANDARD

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the

plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

#### A. Timeliness of Plaintiff's Complaint

Defendant ACT first argues that the Complaint must be dismissed on grounds that Plaintiff Marriott's claim is time-barred under the applicable statute of limitations. (ECF No. 10-1 at p. 17.) "A court may dismiss a complaint on statute of limitations grounds 'if the time bar is apparent on the face of the complaint.'" *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir.

2005)); *see also Sanchez v. Arlington Cnty. Sch. Bd.*, 58 F.4th 130, 135 (4th Cir. 2023) (same). Under Maryland law, the statute of limitations for a breach of contract claim is three years. MD. CODE ANN., CTS. & JUD. PROC. § 5-101 (providing "[a] civil action at law shall be filed within three years from the date it accrues"). A breach of contract claim accrues "when the contract is breached or anticipatorily breached." *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 223 F. Supp. 2d 718, 740 (D. Md. 2002).

ACT insists Marriott's breach of contract claim accrued upon the Cancellation Notice of August 31, 2021, which invoked the Contract's force majeure clause and asserted that the termination was therefore "without liability for any cancellation penalty." (ECF No. 10-1 at p. 18.) Accepting August 31, 2021, as the earliest date of claim accrual, for the reasons set forth below, the court finds Marriott filed its Complaint within the three-year statutory period.

Maryland law provides that "[i]n computing a period of time described in a statute, the day of the act, event, or default after which the designated period of time begins to run may not be included" and

> [t]he last day of the period of time . . . shall be included unless: (1) it is a Sunday or legal holiday, in which case the period runs until the end of the next day that is not a Sunday or legal holiday; or (2) the act to be done is the filing of a paper in court and the office of the clerk of the court is not open on the last day of the period of time, or is closed for a part of a day, in which case the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day on which the office is not open the entire day during ordinary business hours.

MD. CODE ANN., GEN PROVIS. § 1-302.

Accordingly, for an alleged breach of contract that accrued on August 31, 2021, the last day to file a claim was August 31, 2024, unless the office of the clerk of court was not open on that day. The court may, and does, take judicial notice that August 31, 2024, was a Saturday, and

4

the following Monday, September 2, was the Labor Day national holiday, so court was closed. FED. R. CIV. P. 201(b)(2). Accordingly, the next day that was not a Saturday, Sunday, or legal holiday following expiration of the three-year period was Tuesday, September 3, 2024. Plaintiff filed the Complaint in the Circuit Court for Prince George's County on Tuesday, September 3, 2024. (ECF No. 1.)

Based on this analysis, and noting ACT's lack of reply in support of its limitations argument, the court is satisfied that Marriott timely filed the Complaint.

**B. Plaintiff's Breach of Contract Claim and Defendant's Affirmative Defense**

ACT asserts that, even if the Complaint was timely, this court should dismiss the Amended Complaint because ACT properly cancelled the Contract pursuant to the force majeure clause and thus is not required to pay liquidated damages. (ECF No. 10-1 at p. 19.) In response, Marriott insists first that consideration of ACT's affirmative defense is inappropriate at this juncture, and second that ACT misconstrues the meaning of the force majeure clause. (ECF No. 12 at pp. 7–11.)

*1. Consideration of Defendant's Affirmative Defense*

Marriott argues dismissal of its Amended Complaint based on ACT's force majeure argument is inappropriate, because facts necessary to support this affirmative defense do not clearly appear on the face of the pleading. (ECF No. 12 at p. 8.) Marriott is correct that courts "generally cannot reach the merits of an affirmative defense" in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Marriott, however, acknowledges that where the "facts sufficient to rule on an affirmative defense are alleged in the complaint, the [affirmative] defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.*; *see also* ECF No. 12 at p. 8 (quoting same).

5

Marriott urges that "*none* of the facts necessary to ACT's affirmative defense appear on the face of the complaint." (ECF No. 12 at p. 8.)  But application of the force majeure clause rests on the language of the Contract and ACT's Cancellation Notice citing same, both of which Marriott expressly relies upon in the Amended Complaint and includes as exhibits thereto.  Under the Federal Rules of Civil Procedure, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c).  Marriott provides no argument or authority that the court may not consider the Contract and Cancellation Notice in ruling on the Motion.

Additionally, in evaluating a 12(b)(6) motion, the court may take judicial notice of matters of public record.  *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  ACT cites numerous matters of public record – including information published by the Centers for Disease Control and Prevention (operated under the United States Department of Health and Human Services) and declarations of local state of emergency by the County Council of Prince George's County – to support its assertions regarding the COVID-19 Pandemic at the time of its Cancellation Notice.  (ECF No. 10-2, CDC Museum COVID-19 Timeline; ECF No. 10-7, Prince George's County, Maryland's Thirteenth Continued Declaration of Emergency – Coronavirus.)

*2. Application of the Contract's Force Majeure Clause*

ACT argues that the Contract's force majeure clause provides that performance was "'subject to' occurrence of any enumerated force majeure event, including 'natural disaster,' 'epidemic,' 'government . . . advisory,' 'disease,' and 'any other comparable conditions that occur. . . in the location of the [Event].'" (ECF No. 10-1 at p. 21, quoting ECF No. 1-1 at p. 24.)  Marriott counters that this interpretation is incorrect; the clause does not make performance subject to the occurrence of any of the enumerated events alone, but also requires that the enumerated event

"mak[e] it illegal or impossible to provide the facilities or if it becomes commercially impracticable for ACT to hold the meeting." (ECF No. 12 at p. 9, quoting ECF No. 1-1 at p. 24.)

The Contract's force majeure clause reads in full:

> The performance of this agreement by either party is subject to acts of God, war, government regulation or advisory (including travel advisory warnings by the government or World Health Organization), disasters, natural disaster, epidemic, disease, fire, earthquakes, hurricanes, unreasonable extreme inclement weather, quarantine, terrorism or threats of terrorism in the United States as substantiated by the governmental warnings or advisory notices, strikes, civil disturbance, curtailment of transportation, shortages or disruption of the electrical power supply causing blackouts or rolling blackouts (in the city where the meeting is held), any other comparable conditions that occur either in the location of the meeting or in the countries or states of origin along their routes of travel, or other emergencies making it illegal or impossible to provide the facilities or if it becomes commercially impracticable for ACT to hold the meeting. It is provided that this agreement may be terminated in whole or in part or for any one or more such reasons by written notice from one party to the other. This force majeure clause also applies to disasters up to twelve months beforehand that materially compromise the hotel or the destination area's ability to produce the event as outlined in this agreement. This would include the proper functioning of transportation and other area support services.

(ECF No. 1-1 at p. 24.)

"Under Maryland law, the interpretation of a contract is 'ordinarily a question of law for the court.'" *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 551 (D. Md. 2019) (quoting *Grimes v. Gouldmann*, 232 Md. App. 230, 235 (2017)). "The cardinal rule of contract interpretation is to give effect to the parties' intentions." *Dumbarton Imp. Ass'n. Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51 (2013) (citation omitted). To determine the meaning of a contract, courts look first to its written terms. *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 660 (2006). "The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed." *DIRECTV, Inc. v.*

*Mattingly*, 376 Md. 302, 313 (2003). "Maryland courts interpreting written contracts have long abided by the law of objective contract interpretation, which specifies that clear and unambiguous language in an agreement will not give way to what the parties thought the agreement meant or was intended to mean." *Stone*, 361 F. Supp. 3d at 552 (citation omitted). Thus, in interpreting a contract, the court's task is "not to discern the actual mindset of the parties at the time of the agreement," but to "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Dumbarton*, 434 Md. at 52 (citations omitted).

Importantly, a court will not "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used." *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp 3d 576, 593 (D. Md. 2019) (quoting *Brendsel v. Winchester Constr. Co.*, 392 Md. 601, 623 (2006)). A "court will not rewrite the parties' contract simply because one party is no longer satisfied with the bargain he struck." *Loudin Ins. Agency, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 1443 (Table), 1992 WL 145269, at *5 (4th Cir. 1992).

Here, Marriott argues that under the force majeure clause, "to excuse performance there must be both a cause – a force majeure occurrence – *and* a resulting effect: illegality, impossibility, or commercial impracticability." (ECF No. 12 at p. 9 (emphasis original).) But Marriott inserts an "and" where the clause includes an "or." Nothing in the Contract's plain language suggests the meaning Marriott imports, namely that both an enumerated occurrence and illegality, impossibility or commercial impracticability is required. A plain reading of the clause, including its use of the disjunctive "or", indicates that any one of the listed events is sufficient for cancellation. "Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives . . . . With a conjunctive list, all . . . things are required—while with the disjunctive list, at least one of the

[things] is required, but any one . . . satisfies the requirement." *SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 642 n.5 (2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 12, at 116 (2002)) (italics in original); *see also id.* at 642 (comparing *The American Heritage Dictionary of the English Language* 1236 (4th ed. 2006) ("or" is a conjunction "[u]sed to indicate an alternative, usually only before the last term of a series . . . ."), with *id.* at 66 ("and" is a conjunction meaning "[t]ogether with or along with; in addition to; as well as[; u]sed to connect words, phrases, or clauses that have the same grammatical function in a construction.")).

The list of exemplary force majeure events (". . . natural disaster, epidemic, disease . . .") is followed by the following phrase, which is set off by a comma: " . . ., or other emergencies making it illegal or impossible to provide the facilities or if it becomes commercially impracticable for ACT to hold the meeting."  The import of this phrase is that each of the precedent individual force majeure events is presumed by the contracting parties to render it "illegal or impossible" to provide the Hotel, or "commercially impracticable" for ACT to hold its meeting.  Further, the sentence following "or other emergencies making it illegal, or impossible to provide the facilities or if it becomes commercially impracticable for ACT to hold the meeting" reads: "It is provided that this agreement may be terminated in whole or in part or for any one or more such reasons by written notice from one party to the other."  (ECF No. 1-1 at p. 24.)  The following sentence, by specifying that cancellation may occur for "any one or more" of the listed reasons, further indicates the parties intent that occurrence of any one of the listed events – including epidemic and disease – is sufficient to cancel the Contract.  Marriott's proposed interpretation of the Contract – that both a listed event and illegality, impossibility, or impracticability is required for cancellation – is not supported by the plain language of the Contract.

9

Marriott of course does not dispute that the COVID-19 pandemic persisted at the time of ACT's cancellation of the Contract. (ECF No. 12 at p. 8.) Marriott also does not appear to contest that COVID-19 qualifies as a disease or epidemic as those terms are used in the force majeure clause. In any event, such argument would be unavailing given ACT's provision of public record information and documents of which the court is entitled to take judicial notice regarding the contemporaneous prevalence of COVID-19 in Prince George's County, and the public emergency declaration due to same. ECF No. 10-1 at pp. 16–17. Accordingly, as a matter of law, the Contract could be cancelled for occurrence of epidemic or disease, and as a matter of public record, epidemic and disease was present in Prince George's County at the time of the Cancellation Notice. ACT properly cancelled the Contract pursuant to the force majeure clause.

For the reasons set forth above, the court finds that on the face of the Amended Complaint, including documents Marriott offers the court as part of the Amended Complaint, ACT properly cancelled the Contract pursuant to the force majeure clause. Therefore, the court declines to consider the parties' arguments regarding impracticability of performance or foreseeability of the risk of COVID-19 pandemic.

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 16) will be granted.

September 15, 2025

/S/
_____
Julie R. Rubin
United States District Judge